RAYMOND C. RACETTE & others[1] vs. ZONING BOARD OF
APPEALS OF GARDNER.

No. 88-P-279.

Worcester. May 9, 1989. — July 26, 1989.

Present: GREANEY, C.J., DREBEN, & WARNER, JJ.

*Practice, Civil,* Zoning appeal. *Zoning,* Board of appeals: decision; Con-
structive grant of relief.

The filing of a petition for zoning variances with a building inspector of a
city, pursuant to city officials' "standard operating procedure," did not
constitute a filing of the petition with the city clerk as required by G. L.
c. 40A, § 15, so as to start the running of the period within which the
zoning board of appeals must act before the petition would be deemed
constructively granted. [619-620]

CIVIL ACTION commenced in the Superior Court Department
on March 19, 1987.

The case was heard by *Gerald F. O'Neill, Jr.,* J., on a
motion for summary judgment.

The case was submitted on briefs.

*John B. Barrett,* City Solicitor, for the defendant.

*F. Alex Parra & Louis N. Levine* for the plaintiffs.

WARNER, J. On the plaintiffs' motion for summary judg-
ment, a judge of the Superior Court entered a judgment annul-
ling the decision of the zoning board of appeals of Gardner
(board) which denied the plaintiffs' petition for variances. The
judge determined that the petition had been constructively
granted under the provisions of G. L. c. 40A, § 15, as appearing
in St. 1975, c. 808, § 3. The issue is whether, under a procedure
adopted by the board, the filing of the petition with the building
inspector of the city effectively constituted a filing with the

---

[1] Normand R. Racette and Robert P. Racette.

city clerk, as required by § 15, so as to start the running of the seventy-five day period then imposed for decision.[2] We hold that it did not.

The case was presented in the Superior Court on a statement of agreed facts. In the fall of 1986, the plaintiff, Raymond C. Racette, discussed with the board the possibility of obtaining variances in connection with a subdivision of fifteen house lots and the construction of a road. He was told to file a petition for the variances. Later, the city clerk advised him that the "standard operating procedure" for obtaining a variance "required" that the petition be filed first with the building inspector, "as the [c]ity [c]lerk's office does not accept applications for variances until they have been reviewed by the [b]uilding [i]nspector."

On November 24, 1986, Raymond C. Racette delivered to the building inspector a petition for the desired variances, a supporting letter to the board and a check to the city for the filing fee. After a petition for a variance has been filed with the building inspector, it is reviewed for completeness and, if a variance is determined to be necessary, it is then filed by the building inspector with the city clerk who, in turn, forwards it to the board. See G. L. c. 40A, § 15. The building inspector told Racette of this practice.

On December 22, 1986, the building inspector completed review of the petition and made a determination that variances would be required; he filed the petition with the city clerk on December 23, 1986. On March 2, 1987, the board made a decision, filed with the city clerk on March 9, 1987, denying the variances. Thus, the decision was made sixty-nine days after the petition had been filed with the city clerk, and left with the clerk seven days after rendition, but made and filed ninety-eight days and 105 days, respectively, from submission

---

[2] Section 15 was rewritten by St. 1987, c. 498, § 3, approved November 17, 1987, so as to extend in general the period within which a board must act to one hundred days and to put the onus on a petitioner who claims a constructive grant to establish it of record and to apprise interested parties of appellate rights.

of the petition to the building inspector. If the triggering event was the filing of the petition with the city clerk, the board's action was timely; if the time for decision is counted from the delivery to the building inspector, the petition must be deemed to have been constructively granted. See G. L. c. 40A, § 15, as appearing in St. 1975, c. 808, § 3; *Rinaudo* v. *Zoning Bd. of Appeals of Plymouth*, 383 Mass. 885, 885 (1981); *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 621-624 (1983); *Noe* v. *Board of Appeals of Hingham*, 13 Mass. App. Ct. 103, 108 (1982). Compare *Zuckerman* v. *Zoning Bd. of Appeals of Greenfield*, 394 Mass. 663, 665-667 (1985); *Cameron* v. *Board of Appeals of Yarmouth*, 23 Mass. App. Ct. 144, 147-148 (1986).

The judge reasoned only that, as the purpose of the constructive grant provisions of G. L. c. 40A, § 15, "is to induce the board to act promptly," *Capone* v. *Zoning Bd. of Appeals of Fitchburg, supra* at 623, the delivering of the petition for variances to the building inspector in accordance with the city's procedure was sufficient to start the running of the seventy-five day period.

The filing and constructive grant provisions of § 15 are explicit. The process of seeking a variance must begin with the filing of a petition with a city or town clerk. The filing requirements serve important purposes of allowing ready public access to the petition and of fixing in an official record the date from which the constructive grant period is to run.[3] Neither the city nor the petitioner may vary the statutory filing requirement.[4] See *Greeley* v. *Zoning Bd. of Appeals of Framingham*,

---

[3] The clerk's office is the place where all filings concerning a board of appeals' proceedings must be made and from which notices concerning a board's action emanate. The clerk's records determine the time within which statutory rights of appeal may be exercised. The clerk's office is the repository to which interested persons and the parties may confidently look for the procedural and substantive detail of a board's actions. See G. L. c. 40A, § 15, as appearing in St. 1975, c. 808, § 3, and as rewritten by St. 1987, c. 498, § 3.

[4] We note that the adoption of the city's procedure appears to have been well-intentioned and not an attempt to circumvent the time constraints of G. L. c. 40A, § 15.

350 Mass. 549, 552 (1966); *Pasqualino* v. *Board of Appeals of Wareham*, 14 Mass. App. Ct. 989, 990 (1982). The plaintiffs had the right to insist (the sketchy record before us does not show that they did so) that the city clerk accept their petition for filing.

The plaintiffs' estoppel argument is raised for the first time on appeal, and we do not consider it. See *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 565 (1976); *Matthews* v. *School Comm. of Bedford*, 22 Mass. App. Ct. 374, 379 (1986). In any event, the plaintiffs have shown no circumstances warranting an exception to the ordinary rule that "the doctrine of estoppel is not applied against the government in the exercise of its public duties, or against the enforcement of a statute." *Gamache* v. *Mayor of North Adams*, 17 Mass. App. Ct. 291, 294 (1983). See *O'Blenes* v. *Zoning Bd. of Appeals of Lynn*, 397 Mass. 555, 558 (1986); *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 58 n.9 (1985).

As the time for measuring the statutory constructive grant period began with the filing of the petition with the city clerk, the board's decision was timely made and filed. Accordingly, the judgment is vacated, and the case is remanded to the Superior Court for trial on the merits of the appeal from the board's decision denying the requested variances.

*So ordered.*